Good morning, Your Honors. May it please the Court, Counsel, my name is Frederick Goetz and I represent the appellant, Cross FLE, John Eberlein, in this case that involves a dispute of insurance coverage, particularly underinsured motorist coverage under an automobile insurance policy that Mr. Eberlein had with the Standard. The case before the Court presents two questions. First, did John Eberlein have secondary underinsured motorist benefits under his policy with the Standard where he was involved in a motor vehicle accident with an underinsured driver, the crash was the fault of the underinsured driver? Second, if so, does the Standard policy's owned vehicle exclusion apply to deny coverage? The District Court, Judge Nelson, found that there was UIM coverage, I'll use that shorthand, but that the exclusion applied and therefore granted the Standard's motion for summary judgment. I am asking the Court today to now find that the exclusion does not apply to reverse the grant of summary judgment and remand. And on the cross appeal, we ask that you affirm the District Court's finding of coverage. I'll speak first to the coverage question very briefly. Coverage is there under the plain and unambiguous language of the policy, and that's what the District Court found. The policy must be read in its entirety in order to determine coverage. You can't determine coverage based upon the declarations page alone, particularly here when it comes to While the declaration page provides the premiums and the automobiles covered and the named insured, the nature of the coverage provided must be determined by the particular coverage sections. And here, the coverage section for UIM and that insuring agreement provides that the Standard will pay compensatory damages when an insured is legally entitled to recover damages from the owner or operator of an underinsured vehicle because of bodily injury sustained by an insured and caused by an accident. The District Court's straightforward analysis found that all of those requisite parts were present. John Eberlein is undisputed. He's an insured, a named insured under the Standard policy. The injuries were caused by a motor vehicle accident involving an underinsured motorist due to the fault of the underinsured motorist when that vehicle turned in front of Mr. Eberlein's motorcycle. And the Court therefore properly found that the accident triggered the policy's underinsured motorist coverage. The policy's insuring agreement does not limit coverage to accidents involving a vehicle listed on the policy.  I will, yes. Judge Strass, I will do that. The own vehicle exclusion appellee contends or appellant contends does not apply here. Whether or not that applies depends upon the plain and unambiguous language of the policy. The own vehicle exclusion, whether it applies here, comes down to basically, I think, four words. Coverage section as opposed to this District Court interpreted those terms to be synonymous. Respectfully, when the analysis required by Minnesota law is applied, and this Court must apply Minnesota law in analyzing this policy, we believe that conclusion was mistaken. Minnesota law certainly requires that all terms be taken at their face value, their literal unambiguous meaning. But it also applies, and I think, or requires specifically that when you're looking at an insurance policy, particularly an exclusion, the burden is on the company to prove that that exclusion applies. And as a matter of public policy, there's a reading of the public policy of Minnesota favors a grant of coverage. And therefore, just in terms of without any ambiguity, exclusions must be read narrowly. Do we look at the whole policy in making that determination, or do we exclusively look at this particular exclusion? The whole policy, Judge Strauss. Minnesota law is very clear on that. So when we get into that, so for example, in the personal injury protection section, which is, it's on page 28, I don't know which section it is of the policy, but it says this coverage does not apply. And when it's talking about this coverage, it's talking about this particular policy. And then when it's talking about generally coverage, it uses something like such coverage, or underinsured motorist coverage. So throughout the policy, this coverage refers to this particular policy, coverage under this policy. Such coverage and underinsured motorist coverage refers to the coverage more generally. Now, how do you get around that? Well, respectfully, I, looking at those same points, I come to a different conclusion than is implied by your question. If looking at the PIP exclusion specifically, when you are referring to coverage under a specific policy, and there I think they're talking about is there coverage under any other policy. That's the language. There's a reference to any other policy. There's a reference to a policy. So if you're talking about in this exclusion, if this exclusion, if this was meant to apply to coverage under this policy, the standard policy in terms of this coverage language, non-capitalized, you would have had language in there saying this policy. And absolutely, reading the entire contract as a whole, if there is going to be reference to a specific policy and coverage under that specific policy, the standard policy says so. It does so in the PIP exclusion. It does not in the owned vehicle exclusion. Therefore, a reasonable interpretation is that when you just say this coverage without any qualifying phrase, it means this coverage in general. In this case, we have UIM coverage on that motorcycle. It did meet that requirement, and therefore the exclusion does not apply. And I would also look at, if we're looking at the entire policy, the phrase, the very exclusion itself, coverage section is capitalized. And that has meaning. That has significance. We're talking about this coverage section, this particular coverage section. It's a term of art as used in that policy. All standard had to do then in the next line of the exclusion if they meant to reference this coverage section was to say so, to use the same language. But they didn't. They used different language. Well, let me give you the quote that I was referring to. It says, quote, this coverage does not apply, dot, dot, dot, ellipses, to bodily injuries sustained by any relative if such relative is entitled to personal injury protection coverage as a named insured under the terms of any other policy with respect to such coverage. So this coverage in that particular, and it's not capitalized, clearly refers to this policy and this particular coverage under this policy. Such coverage clearly refers to coverage in general. So at the very least, you've got to admit that there's some ambiguity as to what this coverage means, even under your interpretation. Well, I agree that the phrases are different and it's not crystal clear, but it's a plain meaning analysis that's done in light of Minnesota's law and Minnesota's public policy as to exclusions. So I'm familiar with the language you're talking about, Judge Strass, and I think if we just take that, though, and look at that language and compare the language in the own vehicle exclusion. In the PIP exclusion, we're clearly talking about any other policy that provides this coverage, but that there's reference to any other policy. So we're talking about a specific policy, but it's not there in the own vehicle exclusion. And the only conclusion, the only reasonable conclusion from that is that it means this coverage in general, because it doesn't have any particular reference. I would also note that the UMUIM coverage section also includes the phrase this coverage. This is addressed in our, what I'll just call the reply brief. And it's clear that an insured, an named insured need not be occupying a covered auto in order to have UIM coverage. The last point I'll make on this, because I know the district court and the standard rely on Rhode Island law quite heavily in the Fontaine case, which I agree in terms of the policy language is very similar here, but Rhode Island law is materially different from Minnesota's. It does not have the same manner of interpretation when it comes to exclusions. So unless the court has any further questions, I'll reserve the balance of my time. Thank you. Seeing none, Mr. Cashman, he's going to wipe off the lectern first and then you can start. He's going to sanitize that lectern and it's just one of those COVID things. Hey, that's okay with me because I forget everything they tell me too. So I barely know who I am. I shouldn't say that. I'll be removed for lack of confidence. Anyhow, Mr. Cashman, you better start talking before I really embarrass myself. Morning, Your Honors. Michael Cashman appearing on behalf of the Standard Fire Insurance Company. Standard respectfully requests the following relief. First, a determination that Eberlein has no right to seek or obtain UIM insurance coverage under the standard policy because he owned the motorcycle that was involved in the accident and he collected all of the UIM coverage to which he was entitled under the separate policy that he obtained from the Safeco that he purchased specifically for that purpose. And as I will discuss further, this conclusion is mandated really by three things to which I would like to direct the attention to. First, this conclusion is mandated by the abundant Minnesota Supreme Court authorities which state that UIM insurance coverage follows the vehicle, not the person. Secondly, Minnesota statute section 65B49 subdivision 3A5 and the Supreme Court authorities in Minnesota interpreting that provision make it crystal clear that excess UIM coverage for an owned vehicle is not available and that coverage is limited to primary UIM coverage that the insured purchased specifically for that purpose. And that applies to the motorcycle in this case because Mr. Eberlein chose to insure his vehicle, his motorcycle for UIM coverage. And thirdly, the plain and unambiguous terms of the standard policy make it clear that standard did not insure the vehicle, the motorcycle for UIM coverage. The second relief that we request is that the court affirm the part of the district court order where she concluded, the district court concluded, that the owned vehicle exclusion applies and precludes coverage here, which is the correct conclusion because as Minnesota Supreme Court authority establishes, UIM coverage follows the vehicle, not the insured. That's via statute though. When the Supreme Court talks about that, they talk about that in terms of the statute, not in terms of particular provisions. I think your response may well be, well, the statute displaces any provisions to the contrary. But I want to hear what you have to say about whether that's really applicable to a policy with independent language. I'm not sure I understand your question. Well, you're making an argument. Most of the cases say that you're making an argument that comes from cases talking about the no-fault statute, not a particular policy. And so my real question is, is if a policy says different, then does that observation really matter here? The case that I would like to direct your attention to, Your Honor, that addresses your question very specifically, is called VISSER. VISSER v. State Farm Insurance Company, 938 Northwest 2nd, 830. And you can look at page 833 and then also footnote 2 in VISSER. And it states, VISSER basically stands for the proposition that if the policy language purports to be in very explicit policy terms, explicit contract language, which did not exist in VISSER, and certainly does not exist here. And in a bigger response to your question I would say, wait a minute. If the policy language is unambiguous and it provides UIM coverage, which is what the district court found, right, but then it was subject to the exclusion. If that's what the language says, you would agree that the statute would not prohibit the insurer from offering broader coverage than is the minimum coverage under the statute. Is that true? I don't agree, I think, with the way that you phrased the question, at least, Your Honor. Okay, well, let's break it down because it was compound. Let's break it down to this. Would you agree that the policy can provide broader coverage than the minimums that are provided for by the state statute? According to VISSER, only if the language is explicit. Exactly. And that just means that explicit means only plain and unambiguous, right? No. Okay, why not? Because VISSER makes it clear that the language has to explicitly change the statutory requirement. And this all goes back to the fundamental requirement, which is not just statutory. The fundamental requirement that UIM coverage follows the vehicle. It follows the vehicle, not the person. And that's where Mr. Eberlein and where the district court erred when they reached the erroneous conclusion that insurance exists in the first instance because they were looking at it from whether Mr. Eberlein was insured under the standard policy. That's evident from the district court's opinion. And that's the error because when you look at UIM insurance, you have to look at was there UIM coverage purchased for that vehicle. So if not plain and ambiguous, a plain and ambiguous statement creating a new coverage, what does a policy need to say to comply with your view of VISSER? Well, I'm not going to engage in the hypothetical because it would take a lot more than what exists here, and that's demonstrated by VISSER. It's clear. Tell me what your understanding is of something that is plain and direct. It would have to, I think would have to say that the statutory. Say notwithstanding section blah, blah, blah, blah, blah. It would have to say something that explicitly according to VISSER. Okay. And I think this discussion really highlights the importance of stepping back and looking at what this case is really about in the big picture. If Mr. Eberlein was driving an automobile that he owned, it would be crystal clear beyond any doubt that he could not seek so-called secondary or excess UIM coverage under the standard policy. That's absolutely crystal clear. We wouldn't be here today if he was driving an automobile. The only reason that he's here trying to seek so-called secondary insurance is because of the circumstance that he was driving a motorcycle. And he contends that because he was driving a motorcycle, all the Minnesota Supreme Court authority which states that the UIM coverage follows the vehicle, not the person, and that Minnesota Statute 65B-49 doesn't apply, simply because he was driving a motorcycle. That claim is flatly rejected by Hansen, which we've cited in our brief, the Hansen case. And also rejected by the Johnson v. Western National case. Both of these cases stand for the proposition that when you choose the option of buying UIM insurance coverage for a motorcycle, the rules in the statute which dictate the priority of coverage and which policy response apply. So that means that in this instance, you need to look at, specifically at 65B-49 subdivision 3A-5, which makes it crystal clear that when somebody has purchased UIM coverage for their own auto, they get the primary coverage that they purchased for their UIM auto. And to be honest, that's the whole purpose of UIM coverage schemes, is to make sure that you get what you purchase for your vehicle. And Mr. Eberlein purchased UIM coverage from Safeco. And he got exactly what he expected. He did not purchase UIM coverage from Standard. So he shouldn't be entitled under the law which says that the UIM coverage follows the vehicle. He shouldn't be entitled to pursue that under the statute. In fact, he's not, clearly. And it's also clear under the language. So Judge Nelson, at the district court level, erred by ignoring the requirement that you have to look at the vehicle, coverage for the vehicle. And you'll notice that in the briefing, Mr. Eberlein, even throughout all this briefing, ignores, has ignored the fundamental principle that UIM insurance follows the vehicle. Nowhere does he address that point. Well, you said it's clear under the language. Tell me how it's clear under the language. Because read in isolation, I actually think the exclusion could be read both ways. Well, it's clear because when you start with the fundamental principle that UIM coverage follows the vehicle, the declarations page, the general provisions section, state that coverage is provided only for the vehicles listed in the declarations. The declarations are part of the policy. The declarations are crystal clear that the — So it's not clear on its face. That provision's not clear on its face. It's only clear with the background principle that we know that it follows the vehicle. Otherwise, it's ambiguous. I disagree, Your Honor. I'm just — I'm following your argument. No. The policy is clear on the face about which vehicles are insured. Now, what about this provision, though? The owned — what is it? The owned but not insured provision or whatever, whatever we call it. Okay. Well, I'm — I was going to get there, and I'm glad we are because the owned vehicle exclusion is there because it underscores this very fundamental principle that we've just been discussing, that UIM coverage follows the vehicle, not the person. And the reason — the fundamental reason why Mr. Garbeline's argument is incorrect is because if you adopted his interpretation, you would contradict not only that fundamental principle, but it would run counter to the Minnesota Supreme Court authorities and the Minnesota No-Fault Act with respect to priority because an interpretation that Mr. Garbeline is advocating would then require insurers to provide UIM coverage for every single or every single vehicle that is an owned vehicle, even if it was insured under a separate policy. Let me ask you this. I'm not sure the answer matters here, but what if Mr. Eberlein was driving someone else's motorcycle? Would there be coverage? That's a different situation and a fundamental distinction. Yes, he would. And the reason why he would be entitled if he was occupying a non-owned motor vehicle is because UIM insurance is designed to make sure that you have the purchase — the protection that you purchased for your UIM coverage. And when you're riding a motorcycle that somebody else is — I thought you indicated that it follows the vehicle, not the person. Doesn't your answer here contradict that? Maybe not, but — It does not because the Minnesota Supreme Court authorities and most authorities around the country, they talk about how UIM is really kind of a unique coverage. It has a combination of personal first-party insurance and third-party insurance. And with respect to injuries that occur when you're driving an owned vehicle, that's a first-party insurance situation. When you're riding or occupying a vehicle that somebody else owned, that's more in the third-party realm. It's a unique creation, UIM coverage is. That is a distinction, and the purpose of it is to make sure that an insured, such as Mr. Eberlein, has control over determining the amount of UIM coverage that he wants to ensure he will be able to receive if he's riding in a non-owned vehicle where he can't be sure whether that person has purchased UIM coverage or how much they've purchased. When it's his own vehicle, he's in complete control. He's in complete control of the amount of UIM coverage that he purchases. And that is exactly why the Minnesota Supreme Court cases have established the principle that the UIM coverage for an owned vehicle follows the vehicle. Counsel, I think you might be, I'm going to go back to the argument you're making right before Judge Kobus' question. I think you might be over-claiming a bit. The only, if we were to hold that there's coverage here, the only thing that would really happen is you need to change that exclusion to say, well, occupying any motor vehicle owned by that insured, which is not insured under this policy, that's the only thing that would happen is that insurers would change their language to be clear that it's this particular policy and not more generally the coverage. Why is that wrong? Well, the language that exists in the owned vehicle exclusion and the language that Mr. Kobus' proposed additional language doesn't change the meaning. Those are just, would be superfluous words. It doesn't change the meaning. It would be a lot clearer, though. It is clear. Okay. It is absolutely clear. And that's the point that was made by Judge Loken in the Walker case and it's also made in the Rhode Island Supreme Court case. I think I was responding, you said that there would be a parade of horribles and that we'd violate the statute. And my only point is, no, you just change the language of the policy. I mean, the parade of horribles just doesn't exist, I think. Well, I disagree with that because the way that you phrased the question, at least, and I guess what we really need to do is look at what Mr. Eberlein is proposing here. And he's saying I get coverage just because these three words aren't in here. Not only is contrary to all Minnesota Supreme Court authority, the Minnesota statute and the policy language, but it basically would mean that a standard or any UIM insurer would have to insure all owned vehicles even if the insurer did not purchase UIM. Can I ask one more question? You may. Assuming that we find that this particular provision is ambiguous, we disagree with you, then do we fall back on you can strew the language against the drafter, which here is the insurance company. So we're assuming that we disagree on that. Do we apply that canon of construction? Well, no, first of all, I think it's important to keep in mind that Mr. Eberlein agrees that the language is clear and unambiguous. The district court found it was clear and ambiguous. The other one, right? The language that exists in the policy. Nobody is contending it's ambiguous. There's not a case. But we have two different, I'm trying to get you to answer the question. We have two different interpretations and suppose we say that both of them are reasonable. Then do we apply that canon? I don't think so because you don't go to that canon because what I'm saying is that the Mr. Eberlein's interpretation is unreasonable. It's not a matter of ambiguity. We're assuming that away is what I'm trying to, you're not going to answer the question. That's fine. But my point is we reach the conclusion that it's ambiguous. Do we apply that canon?  Correct. I don't think so in this case because there's just no basis for an ambiguity, simply because two people have a different interpretation. Fine. All right. Thank you. Thank you. Mr. Gantz. Counsel mentioned the Walker decision. Just briefly, I think that there is language, the exclusion there does have much more clarifying language that we're talking about coverage under this policy. So I think that's a good example of where the language is clear that you're talking about that particular policy as opposed to this case, this coverage, meaning coverage in general. The standard argues that the conclusion that there is no coverage under the policy is mandated by 65B.49, subdivision 385, Minnesota case law. That's just a position that we fundamentally disagree with for a number of reasons. 65B.49, subdivision 385 is a priority scheme. It is not a list of mandated coverage. That was the holding of the Minnesota Supreme Court in Carlson. It's clear. And that word mandated was specifically used in the Carlson opinion that says no, it is not a mandate. VISR, counsel relies upon VISR. That also is clearly distinguishable. Again, VISR concerned the priority scheme, UDNR 65B.3A.5, in which you had two policies provided by the same company, State Farm, and the issue there was which one is primary. They were both, it was the co-primary argument. No, it's the Pontiac policy that's primary. No, it's the Chevrolet policy that's primary. That's not our issue in this case. It's not a question about priority of coverage. It's a question about whether there is coverage at all. And, Judge Kobus, I think your question was important because if we accept the standards argument, a named insured under their policy, if they are walking across the street and they're hit by an underinsured vehicle, there's no coverage because under the standards policy, it's not an accident involving a listed vehicle. Or if they're, to use your example, if they're using somebody else's motorcycle or a passenger in somebody's motorcycle, there would be no coverage because they're not occupying one of the listed vehicles. So clearly that would be contrary to Minnesota law. Also, the non-existent mandates of 65B.49 Subdivision 385 apply to motor vehicles. Under Minnesota's No Fault Act, 65B.43 Subdivision 2, a motorcycle is not a motor vehicle. That's how the Minnesota legislature has chosen to define that term motor vehicle. So when we're looking at the priority scheme for motor vehicles, they do not apply to motorcycles by the plain language of the statute. Suppose this was a car, though, and that's what I'm trying to figure out with the priority scheme. Assume we disagree with you. You know, if it doesn't appear in the priority scheme, so you have in this instance, let's say it's a car, it's not a motorcycle. You have cars insured under different insurers. You have an accident with one that's not insured by the particular insurer you're suing. The priority schedule would apply. And I think you would be out of luck, wouldn't you? If I may, just so I understand your question. It's the same facts. Let me just throw this out. It's the same facts. I'll just make it even easier. It's the same facts, except for it's a car instead of a motorcycle. So it would be an owned car not insured under the standard policy. Correct. They would have to look to the policy on the vehicle first, because that's the priority scheme. And all these Minnesota Supreme Court cases have looked at first priority coverage. Then, yes, because you are, I agree, because you would be occupying a motor vehicle, then you cannot look to secondary insurance in that circumstance. But that's not our case. So a lot hinges on this being a motorcycle and not being a motor vehicle. It does. But I think the reality is that's how Minnesota law has, the Minnesota NOFA Act does not include motorcycle within definition of motor vehicle. It doesn't. So if the legislature wants to change that, they can, but they haven't. This is the scheme that they've adopted. So I would ask, again, that this coverage that Mr. Eberlein paid for, that the district courts grant a summary judgment be remanded, reversed and remanded, and that the finding of coverage be affirmed. Thank you, Your Honor. Thank you.